IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00327-RBJ-KMT

RANDY TRACY SHAW,

    Plaintiff,
v.

C. ROBERTS,
HUMPHRIES, and
JOHN/JANE DOE, correction officer(s),

    Defendants.

---

ORDER on MOTION TO DISMISS

---

Defendants move to dismiss this case for failure to state a claim and, alternatively, because they are entitled to qualified immunity. The motion is granted for the reasons provided in this order.

## FACTUAL BACKGROUND

Randy Tracy Shaw, an inmate in the Bureau of Prisons' Administrative Maximum facility ("ADX") in Florence, Colorado, filed this lawsuit pro se on February 7, 2020. I take the following facts from the most current version of his amended complaint, ECF No. 9.[1]

On January 22, 2019, Mr. Shaw was using the facility's law library which is located at the end of the living range in E unit. There are 12 cells in this range. No inmate to inmate contact is allowed, and no inmate can be on the range while the law library is being used. Mr.

---

[1] I will explain later why this document is the operative complaint and not ECF No. 34 which was inadvertently deemed by a magistrate judge to be the operative complaint.

1

Shaw alleges that either "John/Jane Doe," a correctional officer, or defendant C. Roberts, also a correctional officer, or both of them, "willfully or recklessly or negligently" opened three secured doors electronically. One of the opened doors secured the law library, and another secured the cell of a "high-ranking member of the Aryan Brotherhood gang." ECF No. 9 at 4.

Mr. Shaw saw the Aryan Brotherhood inmate attempt to obtain a shank from under the cell door of another white inmate, but the shank did not fit under the cell door. Nevertheless, to further thwart the inmate's attempt to obtain the weapon, plaintiff physically subdued the inmate and then returned to the law library, at which time officers electronically closed the library's door. However, he heard racial slurs over the intercom in the law library that is controlled by correctional officer John/Jane Doe. Mr. Shaw alleges that "defendants" orchestrated these events. *Id.* at 5.

Plaintiff alleges that he exhausted his administrative remedies, wrote letters to many civil organizations. He also submitted a complaint to the United States Department of Justice, and in response he received a letter from the warden who stated that the doors were opened by negligence. *Id.* Later in his amended complaint he quotes what appears to be the entire letter from Warden Andre Motevousian, as follows:

> This is in response to your letter to the United States Attorney General William P. Barr. Your letter was forwarded to this office for a response. You request assistance in regards to your allegation of staff violating your civil rights. Specifically, you state your civil rights were violated when a physical altercation occurred between yourself and another inmate on January 22, 2019. You claim the incident was orchestrated and covered up by ADX staff and believe the incident and the alleged issues immediately following the incident were racially motivated by staff at the institution.
>
> On January 22, 2019, at approximately 2:20, staff responded to a report of an activation of a body alarm in Echo Unit. Specifically, an inmate orderly was mopping on Echo 2 range. The secure door to the law library was inadvertently

>opened while you were inside.  You then exited the law library and ran up behind the inmate orderly and began striking him in the head and upper torso, knocking him to the floor.  At that time, the two of you engaged in a physical altercation.  Staff approached the range grill, giving verbal commands at which time you and the other inmate separated and you secured yourself back inside the law library.  Following staff intervention, you and the other inmate submitted to restraints and were removed from the area.  You and the other inmate both received medical assessments due to the altercation.  You did not receive or report any injuries as a result of the altercation.  An investigation into the incident was immediately [sic] the following day, January 23, 2019, by Special Investigative Services staff at ADX Florence.  All video footage and supporting documentation was reviewed.  Appropriate action was taken upon conclusion of the investigation.  Furthermore, it was determined there was no evidence to suggest that the law library door was opened for any reason other than inadvertent error.

*Id.* at 15-16.

Mr. Shaw states that he and the Aryan brotherhood inmate were moved to the Special Housing Unit ("SHU") as a result of the incident.  Conditions there included having only a mattress to sleep on, wearing the same clothes for ten days, and having an inoperable toilet.  While he was there he heard that he had been marked for injury or death, and that the incident had been orchestrated to get government funding for the facility.  *Id.* at 9.

Mr. Shaw's specific allegations about the three defendants are scattered through the amended complaint.

<u>John/Jane Doe</u>.  As noted above, either this individual or C. Roberts or both "willfully of recklessly or negligently" opened the three secured doors.  He or she controlled the intercom over which Mr. Shaw heard racial slurs.  Like other correctional officers he or she is required to take reasonable measures to guarantee the safety of all inmates.  *Id.* at 6.  But he or she "elected to abdicate plaintiff [sic] constitutional rights."  He or she opened the law library door to let Mr. Shaw into the library and then closed the door.  He or she then breached policy by opening two doors "to allow this inmate, a high ranking member of the Aryan brotherhood gang, to roam free

3

on the range." *Id.* at 7.  He or she then opened the law library door.  *Id.*  After the incident and Mr. Shaw returned to the library, he or she closed the law library door.  Mr. Shaw then heard him or her call him a "nigger" over the intercom.  *Id.* at 8.  He or she and C. Roberts then attempted to cover up their malfeasance by eluding responding staff.  *Id.*

C. Roberts.  In addition to the allegations already mentioned, he wrote a disciplinary report on the incident that was not truthful but that resulted in Mr. Shaw's being found "guilty." *Id.* at 10, 14.

Captain Humphrey.  He was Chief of Security at ADX and was part of the staff who responded to the incident.  *Id.* at 8, 10.  Mr. Shaw spoke with him after the incident about conditions in the SHU and about racism by staff.  Captain Humphrey said he would look into it.  Mr. Shaw told him that the written report of the incident was untruthful, and Captain Humphrey responded that "we have to protect our asses."  *Id.* at 11.  Captain Humphrey also told him that he had been "fired" as a result of the incident, meaning that he had been transferred elsewhere.  He said that "it was in my best interest to just leave the incident alone, or I would remain stuck in ADX."  As the supervisor of John/Jane Doe and C. Roberts, Captain Humphrey was in a position to correct the report, but he did not do so.  *Id.* at 11, 14.

## PROCEDURAL HISTORY OF THE CASE

Plaintiff filed this case pro se on February 7, 2020.  ECF No. 1.  Magistrate Judge Gallagher granted him leave to proceed in forma pauperis, ECF No. 4.  However, he also ordered plaintiff to file an amended complaint.  ECF No. 5.  That order is noteworthy for several reasons.  After briefly summarizing the facts as alleged in the original complaint, the Magistrate Judge Gallagher discussed the importance of alleging the personal participation of each named

4

defendant in the alleged deprivation of plaintiff's constitutional rights, including the requirements for suing a "John/Jane Doe" defendant. *Id.* at 3-4. He explained the difference between naming defendants in their "official" versus their "individual" capacities, noting that a *Bivens* action for money damages cannot be maintained against federal officials in their official capacities. *Id.* at 5. He explained how one can file a state law tort claim under the Federal Tort Claims Act. *Id.* at 5-6. Finally, he explained what is required to state an arguable Eighth Amendment claim for deliberate indifference to a substantial risk of serious harm, including a brief reference to the important *Farmer v. Brennan* case that I will discuss later in this order. *Id.* at 7-10.

Mr. Shaw filed an amended complaint on April 15, 2020. ECF No. 6. But the magistrate judge found that the amended complaint was not compliant with his previous order and granted Mr. Shaw 30 days to file another version. ECF No. 7. Mr. Shaw filed another amended complaint on May 9, 2020. ECF No. 9. As I have said, this is the version that is the operative complaint in this case.

In the amended complaint Mr. Shaw asserted two claims. The first claim asserts "Eighth Amendment violation – Negligence, Failure to Protect, Hate Crime(s)." The substance of it is his allegation that the actions of John/Jane Doe, C. Roberts and Captain Humphrey violated his right to be protected from assaults by other inmates. *Id.* at 4-13. His second claim asserts "Deliberate Indifference, Gross Negligence, Eighth Amend. violations." *Id.* at 14. Plaintiff requests $500,000 in damages; an injunction mandating that the Bureau of Prisons remove him from all federal facilities; and an injunction mandating that the Department of Justice review incidents of racial bias at the ADX facility. *Id.* at 22.

5

Defendants Roberts and Humphrey moved to dismiss the amended complaint. ECF No. 24.[2] They argued that there is no *Bivens* remedy for plaintiff's claims. *Id.* at 4-8. The motion emphasized the Supreme Court's holding in *Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017) which stated that a *Bivens* remedy has been recognized by the Court only two times since the original *Bivens* case; that the Court views an expansion of the *Bivens* remedy as a "disfavored judicial activity," and that before any new *Bivens* remedy is permitted courts must assess (1) whether there is any alternative remedial process, and (2) whether any special factors counsel hesitation against devising a new Bivens remedy. ECF No. 24 at 4 (citing *Ziglar,* 137 S. Ct. at 1857-58). Alternatively, the moving defendants relied on the doctrine of qualified immunity. *Id.* at 8-13. In addition, they noted that an inmate may not bring a civil action for damages for mental or emotional injury suffered in custody without a prior showing of physical injury, per 28 U.S.C. § 1346(b)(2). *Id.* at 13-14. Finally, the moving defendants argued that plaintiffs had not stated any claim other than his Eighth Amendment claims, i.e., no FTCA claim. *Id.* at 14.

After seeking and receiving extensions of time, Mr. Shaw filed an "Amended Motion in Part and Opposition to Defendant's Motion to Dismiss." ECF No. 34. A magistrate judge deemed this document to be an amended complaint, indeed the operative complaint, and mooted the then pending motion to dismiss. ECF No. 37. Her confusion is understandable because, in large part, this document repeated plaintiff's allegations from the May 9, 2020, amended complaint. On closer inspection, however, this document does not contain claims for relief. Rather, it is what the caption said it is – a response to the motion to dismiss. In addition to

---

[2] Named defendant "John/Jane Doe" has never been identified or served with a summons and complaint.

rehashing the facts the document contains a long list of case citations from various jurisdictions with Mr. Shaw's interpretation of their holdings.

Nevertheless, because the magistrate judge had mooted their motion to dismiss, defendants Roberts and Humphrey filed another motion to dismiss on February 5, 2021.  ECF No. 41.  In this motion defendants made similar "no new *Bivens* remedy" and "qualified immunity" arguments and added that to the extent plaintiff sued them in their official capacity, those claims had been dismissed by Magistrate Judge Gallagher in his March 17, 2020, order.

Plaintiff did not respond.  Finally, on July 26, 2021, noting plaintiff's lack of response, I issued an order requiring plaintiff to show cause why the case should not be dismissed without prejudice for failure to prosecute.  ECF No. 45.  Mr. Shaw did not show cause as such.  Rather, on August 12, 2021, he filed an untimely response to the second motion to dismiss.  ECF No. 46.  In large part it was a repeat of his string of case citations.

The moving defendants then filed a reply in which they suggested that the Court should dismiss the case because plaintiff did not show cause for his failure to respond to their motion to dismiss.  They also reiterated their substantive bases for seeking dismissal.  ECF No. 47.  Plaintiff has filed an (unauthorized) sur-reply, but I have reviewed it, and it does not change anything in this order.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681. However, the plaintiff meets the threshold pleading standard so long as he or she offers sufficient factual allegations such that the right to relief is raised above the speculative level. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* However, the Court cannot be an advocate for the pro se litigant. *Id.*

## ANALYSIS AND CONCLUSIONS

### A. *Bivens* in the Context of Failure to Protect Inmates from Other Inmates.

Congress provided a damages remedy for persons whose constitutional rights are violated by state officials in 42 U.S.C. § 1983. However, there is no statutory counterpart for alleged constitutional violations by federal officials. That gap was at least partially filled by the Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). The Court recognized an implied cause of action for damages against federal

officials who, under color of their authority, violated an individual's Fourth Amendment right to be free from unlawful searches and seizures. *Id.* at 397. Thus was born what over the years became known as "*Bivens* actions."

In *Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017), the Court stated that it had only recognized *Bivens* actions twice since its original *Bivens* decision: *Davis v. Passman,* 442 U.S. 228 (1979) (recognizing a damages remedy under the Fifth Amendment for gender discrimination by a Congressman); and *Carlson v. Green,* 446 U.S. 14 (1980) (recognizing a damages remedy for a federal prisoner who claimed that the prison's failure to treat his asthma violated the Eighth Amendment's prohibition of cruel and unusual punishment). 137 S. Ct. at 1854-55. It would be better, the Court determined, for Congress to create new remedies, not the courts. *See id.* at 1855-56. The Court did not entirely rule out new *Bivens* remedies, but it provided the "proper test for determining whether a case presents a new *Bivens* context" as follows:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60.

I find that the duty of ADX staff with respect to protection of inmates from assaults by other inmates does not differ in a meaningful way from a previous *Bivens* case decided by the Supreme Court. In *Farmer v. Brennan,* 511 U.S. 825 (1994) the Court began its opinion by stating, "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

9

inmate violates the Eighth Amendment." *Id.* at 828.  A transsexual inmate who displayed feminine characteristics albeit being biologically male was placed in general population at the United States Penitentiary in Terre Haute, Indiana.  This was high security facility as is ADX in the present case.  The inmate filed a *Bivens* complaint alleging that in transferring her to this penitentiary and placing her in general population despite knowledge of the penitentiary's violent environment and a history of inmate assaults, the responsible officials knew that she would be particularly vulnerable to sexual attack by other inmates.  Thus, plaintiff claimed, the responsible officials were deliberately indifferent to her safety and violated her Eighth Amendment rights.

The Court famously indicated that while the Constitution does not mandate comfortable prisons, it does not permit inhumane ones.  *Id.* at 832.  "In particular, as the lower courts have uniformly held, and as we have assumed, 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"  *Id.* at 833.  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834.

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id.*  Rather, two requirements must be met.  First the alleged deprivation of rights must be "'sufficiently serious,'" meaning that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.*  Second, the prison official must have a "'sufficiently culpable state of mind,'" and "[i]n prison-conditions cases that state of mind is one of 'deliberate indifference to inmate health or safety."  *Id.*  "Deliberate indifference" is "more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or

with knowledge that harm will result." *Id.* at 835. "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* That is not an objective test. "We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In *Farmer* the district court had granted summary judgment for the prison officials, and the Seventh Circuit had affirmed. The Supreme Court remanded the case for application of the principles explained in its opinion, potentially including consideration of additional evidence and further findings. *Id.* at 848-49. Perhaps that resolution explains why *Farmer* is not counted as a fourth *Bivens* action recognized by the Court.

Nevertheless, the principles announced in *Farmer* remain viable to this day. For example, in *Cuevas v. United States,* No. 16-cv-00299-MSK-KMT, 2018 WL 1399910 (D. Colo. March 19, 2018), a *Bivens* case brought by an ADX inmate who claimed that prison officials provided "sensitive information" about his crimes to fellow inmates to incite them to retaliate violently against him, Judge Krieger wrote,

> The basic contours of Mr. Cuevas's 8th Amendment claim are well-settled. The Supreme Court has long recognized that a prison official's deliberate indifference to a substantial risk of inmate-on-inmate violence violates the 8th Amendment. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). Gratuitously allowing the beating of one prisoner by another serves no legitimate penological objective. Typically, to establish an 8th Amendment claim of this type, the inmate must show that he faced an objectively substantial risk of serious harm and that the defendant had a subjective knowledge of that risk but nevertheless recklessly disregarded it. *Id.* at 834. The 10th Circuit has specifically recognized that, where a correction officer labels an inmate as a 'snitch,' communicates that label to other inmates, and does

11

>   so 'aware of the obvious danger associated with a reputation as a snitch,' and 8th
>   Amendment violation is clearly established. *Benefield v. McDowall,* 241 F.3d
>   1267, 1271 (10th Cir. 2001).

2018 WL 1399910 at *2.

Notably, Judge Krieger cited and discussed *Ziglar*. "Although the Court is cognizant of *Ziglar*'s reluctance to approve *Bivens* claims in new contexts, the Court finds no factors here that would caution against adopting a *Bivens* remedy in this particular situation." *Id.* at *4. She rejected defendants' argument that Mr. Cuevas had adequate Congressionally-created alternative remedies via the BOP's Administrative Remedy program or a suit for injunctive relief only. In short,

>   this Court sees no reason why a *Bivens* remedy should not be available to an
>   individual like Mr. Cuevas, who sues individual officers for violating his 8th
>   Amendment rights by purposefully disclosing sensitive information about him to
>   other inmates so as to induce them towards violence against Mr. Cuevas. Such a
>   claim is so clearly established and directed at the individual actions of rank-and-
>   file prison officials that there is no reason to defer to Congress' decisionmaking
>   (and the concomitant inertia) in order to decide whether a damages remedy should
>   lie. Even in the post-Ziglar world, this case presents an appropriate one for
>   recognition of *Bivens*-type liability.

*Id.*

The court rejected defendants' qualified immunity and failure to exhaust administrative remedies defenses. *Id.* at 4-9. The court also ruled on the defendant's FTCA claims and his intentional infliction of emotional distress claim. *Id.* at **9-10. No such claims have been asserted in the present case.

### B. **Application to This Case.**

I agree with Judge Krieger's analysis of the *Bivens* remedy in the *Cuevas* case. Nevertheless, and even assuming the truth of Mr. Shaw's factual allegations (but not his

conclusory allegations), I conclude that his case must be dismissed. Frankly, I do not find that the facts alleged meet either of *Farmer's* two requirements for finding the defendants constitutionally liable.

First, I do not find that the alleged deprivation of Mr. Shaw's rights was "sufficiently serious," which was defined to mean that the inmate must show (at this stage of the case, must allege facts plausibly showing) that he is incarcerated under conditions posing a substantial risk of serious harm. To be sure, if any correctional officer purposefully opened electronically operated doors with the intent to put an inmate in harm's way, that would be a serious offense. However, Mr. Shaw's allegation that one or two correctional officers did this on January 22, 2019, for that purpose is essentially a conclusory allegation. More importantly, it was one isolated incident. He was not threatened by the white inmate. He was not assaulted or injured by the white inmate. Indeed, by his own account, Mr. Shaw instigated the physical contact with the white inmate and "subdued" him. The incident occurred more than two and a half years ago. There is no allegation that either before or after the incident Mr. Shaw has ever been assaulted by any other inmate. Thus, notwithstanding his description of the incident, it appears that Mr. Shaw has been well protected from serious harm inflicted by other inmates.

Moreover, although this is the motion to dismiss stage, the Court can consider the warden's letter, because it was incorporated expressly into the amended complaint. The warden indicated that the incident was investigated on the next day, January 23, 2019, by Special Investigative Services staff at ADX Florence. All video footage and supporting documentation was reviewed. The investigation concluded that the doors were inadvertently opened; that Mr. Shaw had attacked an orderly who was mopping the floor; and that the two inmates were

separated before either of them was injured. Mr. Shaw has not alleged that the warden or the Special Investigative Services staff falsely reported their findings to cover up the incident. This too tends to show that the conditions at ADX have not created a serious risk that Mr. Shaw will be harmed by other inmates in the facility.

Second, I do not find that moving defendants acted with deliberate indifference to his health or safety. The Count indicted in *Farmer* that a prison official could not be found to have been deliberately indifferent within the meaning of the Eighth Amendment unless the official both knew of and disregarded an excessive risk to inmate health or safety. Plaintiff's allegations regarding Captain Humphrey do not come anywhere close to meeting this requirement. There is no allegation that he had any involvement in the January 22, 2019, incident until after it was over – he and other staff members responded to the scene, separated the two inmates, and ended the incident. Mr. Shaw alleges that he informed Captain Humphrey that correctional officer C. Roberts' report about the incident was not truthful, but (implicitly) the report was not changed. Even if those allegations are accepted as true, that doesn't show that Captain Humphrey knew of but disregarded a prospective excessive risk to Mr. Shaw's health or safety. And I again bear in mind that the investigation of the incident by the Special Investigative Services staff did not support Mr. Shaw's story.

With respect to correctional officer C. Roberts, Mr. Shaw has alleged that either he <u>or</u> John/Jane Doe <u>or</u> both "willfully or recklessly or negligently" opened the three doors. Those allegations fall short of alleging as facts that either of them opened the doors with deliberate indifference to his health or safety. Mr. Shaw plainly does not know whether C. Roberts had any part in the opening of those doors, and if he did, whether his actions were intended to put Mr.

Shaw in jeopardy. Again, the investigation by the Special Investigative Services staff, none of whom have been named as defendants in the case, concluded that the doors were opened inadvertently. The only "fact" alleged concerning C. Roberts is that he wrote up an incident report after the fact that, in Mr. Shaw's opinion, was not truthful. Even assuming the truth of that allegation, it does not plausibly show that C. Roberts knew of but disregarded a risk of serious harm to Mr. Shaw.

As for correctional officer John/Jane Doe, he or she has not been identified or served with a summons or complaint in this case. As Magistrate Judge Gallagher pointed out to Mr. Shaw shortly after the case was filed, he must at least provide enough information about each Doe defendant so the individual can be identified for service of process. ECF No. 5 at 4 (citing *Roper v. Grayson,* 81 F.3d 124, 126 (10th Cir. 1996). The file also shows that although this case is approximately 18 months old, Mr. Shaw has engaged in no discovery to attempt to determine John/Jane's identity.[3]

In sum, it is clear to this Court that Mr. Shaw believes that there is racism at ADX, and that as an African American man, he has been the victim of racial slurs and discriminatory conduct. He is considers inmates who are members of white supremacy gangs to be a threat to his safety. He believes that the January 22, 2019, incident was created intentionally by one or more correctional officers, and that but for his intervention and subduing the inmate who was working on his range, he might have been harmed. I agree with him that prison officials have a duty to protect prisoners from violence at the hands of other prisoners to the extent that it can be

---

[3] Even if John/Jane Doe had been served, the allegations against him or her are subject to similar concerns as with defendant Roberts.

done in a prison setting. But I conclude that he has not stated a claim on which relief can be granted against the named defendants in this case.

## ORDER

1. The motion to dismiss of defendants Roberts and Humphrey, ECF No. 41, is granted. The claims against them are dismissed with prejudice. As the prevailing parties, defendants Roberts and Humphries are awarded their costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

2. The claims against defendant John/Jane Doe are dismissed without prejudice for failure to prosecute.

3. The case is dismissed, and judgment will enter accordingly.

DATED this day 13th day of September, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge